IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

TARA M. B.,

                 Plaintiff,

      v.                            Civil Action No.
                                 1:22-CV-1058 (MAD/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

_____

APPEARANCES:               OF COUNSEL:

FOR PLAINTIFF

OSBORN LAW, P.C.          LINDSAY TRUST, ESQ.
43 West 43rd Street Suite 131
New York, NY 10036

FOR DEFENDANT

SOCIAL SECURITY ADMIN.    KATHRYN S. POLLACK, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §

405(g), to challenge a determination of the Commissioner of Social

Security ("Commissioner") finding that she was not disabled during the relevant period and, accordingly, is ineligible for the disability insurance benefits ("DIB") for which she has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in July of 1990, and is currently thirty-three years of age. She was twenty-eight years old on March 28, 2019, the date upon which she allegedly became disabled due to her medical conditions. Plaintiff measures five feet and three inches in height, and weighed between approximately two hundred and two hundred and forty-five pounds during the relevant period. Plaintiff reported that she lives with her husband and minor daughter in a trailer in East Durham, New York.

In terms of education, plaintiff reports that she graduated from high school and completed vocational training in medical assisting. She has worked in the past most relevantly as a receptionist and medical assistant at various physicians' offices.

Plaintiff alleges that she suffers primarily from effects of bipolar/schizoaffective disorder and anxiety.  As is relevant to her application, plaintiff has treated for her mental impairments almost exclusively with Dr. Naveen Achar at Pinnacle Behavioral Health.

At the administrative hearing related to her claim for disability benefits, held on October 20, 2020, plaintiff testified that she experiences anxiety, anger, and hallucinations as a result of her mental health impairments that make it difficult for her to sustain full-time work.  Specifically, plaintiff testified that her visual and auditory hallucinations make her anxious and impact her ability to remain focused.  She stated that medication helps her symptoms if she takes them on time, but that stress can trigger hallucinations.  Plaintiff reported that she orders groceries and picks them up outside the store because she has had issues with people when shopping in the store.  She also stated that she does not clean very often because of the stress it causes and her difficulty concentrating on tasks, cannot sit for long periods of time because of her anxiety and paranoia, and does not cook or do laundry.  Plaintiff stated that she can drive, attend parent-teacher conferences once per year, and push her daughter on the swing in their yard.  She also reported that her only hobby is reading but she can read for only about fifteen minutes at a time because

of difficulty concentrating.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on June 17, 2019, alleging that she became disabled on March 28, 2019.  Administrative Law Judge ("ALJ") David F. Neumann held an administrative hearing related to that application on October 20, 2020, and subsequently issued a decision on November 24, 2020, finding that plaintiff was not disabled.  That opinion became a final determination of the agency on May 27, 2021, when the Social Security Appeals Council denied plaintiff's request for review of the ALJ's decision.

    B.    The ALJ's Decision

In his decision, ALJ Neumann applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff had not engaged in substantial gainful activity during the relevant period, although he noted that work activity plaintiff had started one week prior to hearing would likely be considered to be substantial gainful activity if she proves able to sustain that work.  The ALJ next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including asthma

4

and a schizophrenia spectrum disorder.  As part of his step two finding, ALJ Neumann additionally found that plaintiff's alleged left ankle surgery and obesity do not rise to the level of severe impairments.

At step three, ALJ Neumann examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 3.03 and 12.03.

ALJ Neumann next surveyed the available record evidence and concluded that, during the relevant period, plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following exceptions:

> the claimant can perform simple, routine, repetitive work at an SVP of 1 or 2. The claimant can have occasional interaction with supervisors, coworkers, and the public. The claimant cannot perform production rate or pace work. The claimant must avoid concentrated pollutants and temperature extremes.

ALJ Neumann went on to step four and concluded that plaintiff is unable to perform any of her past relevant work.  The ALJ then proceeded to step five and, after eliciting testimony from a vocational expert, found

that plaintiff remains able to perform available work in the national economy, citing as representative positions the jobs of marker, routing clerk, and housekeeping cleaner.  Based upon these findings, ALJ Neumann determined that plaintiff was not disabled at the relevant times.

## C.    This Action

Plaintiff commenced this action on October 13, 2022.[1]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ failed to properly evaluate the opinions provided by consultative examiner Dr. Brett Hartman and treating physician Dr. Naveen Achar pursuant to the requirements of the relevant regulations.  Dkt. No. 15.

Oral argument was conducted in this matter, by telephone, on September 13, 2023, at which time decision was reserved.

## III.   DISCUSSION

## A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were

---

[1]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, at step five the agency

must examine whether the claimant can do any other work.  *Id.* §§

404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff argues that the ALJ erred by failing to properly articulate a

consideration of the factors of supportability and consistency when

assessing the opinions of consultative examiner Dr. Brett Hartman and

treating physician Dr. Naveen Achar.  Dkt. No. 15.  Because plaintiff's

application was filed after March 27, 2017, this case is subject to the

amended regulations regarding opinion evidence. Under those regulations,

the Commissioner "will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s), . . . including those

from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[2] and consistency[3] of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the

---

[2]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[3]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

      1.   <u>Dr. Brett Hartman</u>

On September 9, 2019, after conducting a psychiatric evaluation of plaintiff, Dr. Hartman opined that plaintiff is able to understand, remember, and apply simple directions and maintain personal hygiene and awareness of hazards, but has moderate difficulties understanding, remembering, and applying complex directions and sustaining concentration, moderate-to-marked difficulties using reason and judgment and interacting adequately with others, and marked difficulties sustaining an ordinary routine due to mood swings and regulating her emotions.  Administrative Transcript ("AT") at 312.[4]

The ALJ found this opinion to be partially persuasive, stating that, although it is somewhat supported by Dr. Hartman's examination report, the degree of limitations related to interacting adequately with others, sustaining an ordinary routine, and regulating emotions are not supported by his own objective findings.  AT 17-18.  Similarly, the ALJ found that

---

[4]     The administrative transcript is found at Dkt. No. 10, and will be referred to throughout this decision as "AT __."

although the specified moderate limitations are consistent with the

longitudinal record, the greater opined marked limitations are not

supported.  AT 18.  In making this finding, the ALJ cited to the findings of

various mental status examinations, plaintiff's subjective reports of

paranoia, hallucinations, and anger outbursts, and her reported activities of

daily living.  *Id.*

Plaintiff argues that the ALJ failed to clearly articulate his

consideration of the requisite supportability and consistency factors.  That

argument lacks facial merit.  The ALJ quite clearly and explicitly discussed

the extent to which this opinion was supported by the findings in Dr.

Hartman's own examination report and consistent with the broader body of

medical evidence in the record, providing specific examples of relevant

treatment note findings, and indicating specifically which findings within Dr.

Hartman's opinion he found to be unsupported by and/or inconsistent with

the relevant evidence.  That plaintiff believes the ALJ's conclusions are

erroneous in light of the evidence she cites in her brief represents little

more than a request to reweigh the evidence.  In the absence of any

indication that the ALJ misconstrued or ignored pertinent evidence, such a

measure is not the proper function of this court.  *See Dale A. M. v. Comm'r

of Soc. Sec.*, 19-CV-1150, 2021 WL 1175160, at *22 (N.D.N.Y. Mar. 29,

2021) (Scullin, J.) (noting that, "to the extent that Plaintiff points to evidence in the Administrative Record that reasonably might support a conclusion that [she] is disabled, whether there is substantial evidence supporting the appellant's view is not the question on appeal"); *Kaleigh O. v. Comm'r of Soc. Sec.*, 19-CV-0940, 2020 WL 5751171, at *5 (N.D.N.Y. Sept. 25, 2020) (Dancks, M.J.) (noting it is the ALJ's responsibility to make factual findings in the first instance, not the court's).  Because the ALJ's assessment and interpretation of the evidence, as will be discussed in greater detail below related to Dr. Achar's opinion, appears to be reasonable and supported by substantial evidence, I find no reason to second-guess his conclusions regarding consistency and supportability as to Dr. Hartman's opinion.

## 2.    Dr. Naveen Achar

On October 15, 2020, treating physician Dr. Achar opined, in the section of the form titled "making occupational adjustments," that plaintiff has poor or no ability to deal with work stress, function independently, or maintain concentration and attention, fair ability to use judgment, deal with the public, and interact with supervisors, and unlimited or very good ability to follow work rules and relate to coworkers.  AT  418.  Dr. Achar explained that these limitations were because "[plaintiff] has persistent psychotic symptoms that cause auditory hallucinations, depression, lack of

concentration, and poor stress tolerance." *Id.* In the section entitled "making performance adjustments," Dr. Achar opined that plaintiff has poor or no ability to understand, remember, and carry out complex, or even detailed instructions, but good ability to understand, remember, and carry out simple job instructions, stating that plaintiff "would find it very difficult to carry out tasks due to depression [and] psychoses." AT 419. In the section entitled "making personal-social adjustments," he opined that plaintiff has poor or no ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability, although she has good ability to maintain personal appearance. *Id.* Dr. Achar explained that plaintiff "would be preoccupied with mental health symptoms." *Id.* Lastly, Dr. Achar indicated that plaintiff can manage benefits in her own best interest, and that the specified limitations have been present since 2018. *Id.*

The ALJ found this opinion to be somewhat persuasive. Regarding the supportability factor, the ALJ stated that the objective findings in Dr. Achar's examination notes, which generally show normal findings and improvement with medication, do not support the degree of limitation he opined. AT 18. The ALJ further stated, as to consistency factor, that although the record shows some mental limitations, it is not consistent with

the degree of limitations opined, including in the areas of maintaining attention and concentration and adjusting socially. *Id.* The ALJ again referenced the findings on mental status examinations, plaintiff's subjective reports of paranoia, hallucinations, and anger, and her reported activities of daily living as being consistent with the degree of limitation indicated in the RFC finding. AT 18-19.

As with Dr. Hartman's opinion, it is clear that the ALJ provided an articulation of the relevant factors of consistency and supportability as required under the applicable regulations. I note that, in this case, there is a great deal of overlap between those two factors, given that Dr. Achar provided nearly all of plaintiff's relevant mental health treatment during the period. Just prior to and near the beginning of the relevant period when plaintiff allegedly became disabled, plaintiff was working and reported some ongoing feelings of rage, depression, difficulty concentrating, trouble with memory, hallucinations, and paranoia, and was generally observed to have an irritable mood. AT 341, 344, 347, 350. In May 2019, she reported feeling "less psychotic" on a higher dose of Risperdal, and her mental status examination revealed only an irritable mood. AT 338. In August 2019, she reported she was currently working in phlebotomy, and had restarted her medications after she had stopped them for a few days and

decompensated.  AT 335.  She further reported that she was not experiencing any psychosis or paranoia, and that Xanax helped, although she was not sleeping well.  AT 335.  In September 2019, she was noted to have no psychosis and a normal mental status examination, although Dr. Achar noted she was "mentally stable but unable to work . . . she decompensates at work."  AT 334.  The following month, plaintiff reported feeling better with no psychosis, no hallucinations, and a weight loss of ten pounds.  AT 329.  In December 2019, plaintiff reported feeling stable and happy with her progress, despite some unidentified side effects of lithium, and her mental status examination was normal.  AT 328.  At her next appointment in June 2020, she reported she was "doing rather good" and that her mental health was stable and she was continuing to lose weight. AT 379.  In August 2020, plaintiff reported some occasional stiffness in her thumb and pointer finger but that her mental health was fine and she was not experiencing any psychosis.  AT 398.  In September 2020, she again reported no psychosis, although she was experiencing some panic attacks "before she wakes up," and her mental status examination was normal.  AT 395.

    As the ALJ stated, these treatment records do not generally corroborate the opinion of Dr. Achar that plaintiff has poor or no ability to

perform many various activities.  Indeed, apart from the statement in the
September 2019 treatment note that plaintiff is unable to work even while
ostensibly mentally stable because she decompensates at work, Dr.
Achar's treatment notes show that plaintiff's hallucinations and paranoia
resolved while on medication, and she continuously reported and displayed
improvement in her mood by mid-2019.  Further, the ALJ noted in his
discussion of substantial gainful activity that plaintiff had begun working a
full-time job in October 2020 without any significant accommodations and
without occurrence of hallucinations.  AT 12.  Although the ALJ
acknowledged that plaintiff had only been working in that job for a week
prior to the hearing, it serves as contrary evidence to Dr. Achar's
statements that the stress of work would make plaintiff decompensate even
while compliant with her medications. I note also that Dr. Achar's medical
source statement is dated two days after plaintiff began working that job,
and more than a year from the last notation of any pertinent psychiatric
symptoms or decompensation in his treatment notes.  AT 419.

I do acknowledge that the ALJ did not directly address many of the
written explanations provided by Dr. Achar within the medical source

statement form when explaining his supportability finding.[5]  However, I do not find this to be a fatal error, because the discussion the ALJ did provide is sufficient for me to glean the way in which he viewed those explanations. Specifically, the ALJ cited to plaintiff's documented improvement of her symptoms with medication, an interpretation that is supported by Dr. Achar's own records.  *See Emily J. T. v. Kijakazi*, 22-CV-0084, 2023 WL 2474790, at *7 (N.D.N.Y. Mar. 13, 2023) (Sannes, J.) (finding any failure to explicitly discuss the supportability factor was harmless where the court "can glean that the substance of the regulation was not traversed," specifically in the context of a decision where it was apparent from statements in the ALJ's decision how he assessed supportability of that opinion); *Enid N. C. O. v. Kijakazi*, 21-CV-0191, 2022 WL 4115633, at *3 (N.D.N.Y. Sept. 9, 2022) (Sannes, J.) (finding no error in the ALJ's failure to expressly state why he rejected an opinion because the court was able to glean the ALJ's rationale).  Yet, despite those records clearly documenting that plaintiff had not been experiencing psychotic symptoms, including hallucinations, since prior to August 2019, Dr. Achar's written explanations on the medical source statement indicate that the opined limitations are

---

[5]    I note that the ALJ did directly acknowledge the statement that plaintiff would be preoccupied with her mental health symptoms within his discussion of the opinion.  AT 18.

related to the presence of persistent psychotic symptoms including auditory hallucinations.  AT 418.  Nor are symptoms of depression, lack of concentration or poor stress tolerance documented in the records from mid-2019 through 2020.  Because Dr. Achar's explanations do not appear to be consistent with his own treatment notes, there was no reason for the ALJ to credit them over the improvement of her symptoms with medication that was documented in the treatment notes.

As to the consistency factor, the only objective medical evidence that is not from Dr. Achar himself appears to be the examination by Dr. Hartman, which revealed only an anxious affect, nervous mood, and mildly impaired attention and concentration, all of which findings the ALJ explicitly discussed in his assessment of Dr. Achar's opinion, and which the ALJ reasonably found to not be consistent with the poor or no abilities that Dr. Achar opined.[6]  AT 18-19, 311.  Further, although the ALJ indicated that plaintiff's subjective reports of symptoms and daily activities generally support the level of functioning described in the RFC finding, the ALJ also

---

[6]      In addition to the objective medical evidence, the record also contains the prior administrative medical findings of the non-examining state agency medical sources, Dr. E. Gagan and Dr. J. May.  These sources opined that plaintiff is able to understand, remember and carry out simple and semi-complex instructions and to adapt to changes in the work setting with limited contact with others.  AT 84, 98.  The ALJ found these opinions to be somewhat persuasive, but ultimately concluded that plaintiff experiences greater limitations in light of all of the evidence in the record.  AT 17

found that her statements concerning the intensity, persistence, and limiting

effects of her symptoms are not entirely consistent with the medical and

other evidence.  AT 16.  The ALJ's discussion of that relevant evidence

included noting that although at some points plaintiff did show some

instances of irritable or nervous mood, anxious affect, mildly impaired

attention and concentration, impaired judgment, hallucinations, and

paranoia, they also indicated improvement when plaintiff complied with her

medications.  AT 16.  This finding is consistent with the treatment records

of Dr. Achar which, as were discussed above, show that plaintiff's

symptoms improved and she was generally noted to be stable once placed

on medication.  I therefore do not find the ALJ's consideration of plaintiff's

subjective reports when formulating the RFC, to the extent he found those

consistent with the other evidence, to be erroneous.

Based on the foregoing, I find that the ALJ properly assessed the

opinions of Dr. Hartman and Dr. Achar under the applicable regulations,

and therefore recommend that the Commissioner's decision be affirmed.

## IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the

plaintiff in support of her challenge to the Commissioner's determination, I

recommend a finding that the determination resulted from the application of

proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 19) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     September 21, 2023
           Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge